## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| **THOM BESSO** § | |
| *Plaintiff,* § | |
| § | |
| vs. § | Civil Action No. |
| § | |
| **KEYCITY CAPITAL LLC** § | |
| And **TIE LASATER,** § | |
| *Defendants.* § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Thom Besso ("Plaintiff" or "Mr. Besso") brings this action individually against KeyCity Capital LLC ("KeyCity") and Tie Lasater ("Lasater) (collectively "Defendants") and in support shows the Court the following:

### I.    NATURE OF THE ACTION

1. This lawsuit arises from Defendants' willful violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., ("FLSA") and failure to pay Mr. Besso properly under the FLSA, and Defendants' defamatory statements regarding Mr. Besso after terminating Mr. Besso's employment.

2. Mr. Besso was employed at KeyCity from September 1, 2020, to October 26, 2022. However, Defendants unilaterally changed Mr. Besso's status from 1099 contractor to W-2 employee during that time period without any corresponding change in his primary job duties or methods of pay.

3. Mr. Besso began working as a 1099 independent contractor for KeyCity on September 1, 2020 and was changed to a W-2 status on November 1, 2021.

4. At all relevant times, Mr. Besso was a KeyCity employee pursuant to the FLSA.

5.  During the time period Mr. Besso was misclassified as a 1099 worker/independent contractor, Mr. Besso routinely worked in excess of 40 hours per seven-day workweek but was not paid any overtime premium pay for his overtime hours worked.

6.  Mr. Besso files this lawsuit individually and seeks all damages available under the FLSA, including unpaid overtime wages, liquidated damages, legal fees, costs, and post-judgment interest.

7.  In addition, on October 26, 2022, Lasater terminated Mr. Besso's employment on behalf of KeyCity. Upon inquiring about the reasons, Lasater provided two baseless and defamatory reasons that were demonstrably false. Mr. Besso adamantly and properly refuted both reasons. Nonetheless, upon information and belief, Defendants have continued to publish the utterly false and defamatory statements to other third parties.

8.  Accordingly, Mr. Besso brings this action to recover unpaid overtime compensation pursuant to the FLSA and to recover damages for the defamatory statements.

## II.  PARTIES

9.  Plaintiff Thom Besso is a natural person residing in Fort Bend County, Texas.

10.  Plaintiff worked for Defendants in Texas and was classified as an independent contractor from September 1, 2020 to November 1, 2021, and later as a full-time salaried employee from November 1, 2021, until October 26, 2022.

11.  At all relevant times for the FLSA claim, Plaintiff was a covered employee within the meaning of the FLSA.

12.  Defendant KeyCity is a foreign limited liability company with its principal place of business in Tarrant County, Texas. Defendant KeyCity may be served with process through its

registered agent, Roxana Mosley, at 1209 South White Chapel Blvd., Suite 180, Southlake, Texas 76092.

13. At all relevant times, Defendant KeyCity has done business in the State of Texas.

14. At all times between September 2020 to present, Defendant KeyCity is and has been an "enterprise engaged in commerce" as that phrase is defined by the FLSA.

15. At all times between September 2020 to present, Defendant KeyCity employed, and continues to employ, two or more employees.

16. At all times between September 2020 to present, Defendant KeyCity employed two or more employees who engaged in commerce and/or who handled, sold, or otherwise worked on goods and/or materials that have been moved in and/or produced for commerce by any person.

17. On information and belief, at all times relevant to this lawsuit, Defendant KeyCity has had annual gross sales or business volume in excess of $500,000.

18. Throughout the relevant period, Defendant KeyCity employed Mr. Besso within the meaning of the FLSA.

19. Defendant Lasater is an individual, founding partner, and CEO of Defendant KeyCity. Defendant Lasater is a resident of Tarrant County, Texas, and may be served with process at his usual place of business at 1209 South White Chapel Blvd., Suite 180, Southlake, Texas 76092 or at his last known home address of 7230 Shady Grove Rd, Keller, TX 76248, or wherever he may be found.

### III.   JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the FLSA, which is a federal statute.

4876-8581-8489v.9

21. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) because it is so closely related to the federal claims that they form a single case or controversy.

22. This Court has jurisdiction over Defendants because Defendants conduct substantial business transactions in the Northern District of Texas and have sufficient minimum contacts with this state to be subject to this Court's jurisdiction.

23. Venue of this action is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in this District and Division, and Defendant KeyCity maintains an office in this District.

## IV.   FACTUAL ALLEGATIONS

### A. Defendants engaged in FLSA violations.

24. KeyCity is a financial services company specializing in private equity investments in real estate and strategic alternative investments.

25. Lasater is the Chief Executive Officer and founding partner of KeyCity.

26. Mr. Besso began his employment with KeyCity on September 1, 2020. Prior to September 1, 2020, Mr. Besso had successfully been running his own recruiting practice for 23 years.

27. At all times during his employment with and/or work for KeyCity, Mr. Besso's essential job functions were recruiting, hiring, and training employees.

28. When Mr. Besso began work for KeyCity on September 1, 2020, KeyCity improperly classified him as a 1099 independent contractor.

29. On November 1, 2021, Mr. Besso's status changed from 1099 independent contractor to W-2 employee. There was no corresponding change in Mr. Besso's primary job

duties or method of pay relative to that change. The only material change in Mr. Besso's work for KeyCity at that time was that Mr. Besso officially became the Chief Talent Officer.

30. Mr. Besso's job duties as a W-2 employee were the same exact job duties he had as an independent contractor, including recruiting, hiring, and training employees.

31. During the time period KeyCity labeled Mr. Besso as a 1099 worker/independent contractor, Mr. Besso was an employee pursuant to the FLSA.

32. KeyCity exercised control over when and how Mr. Besso performed his work.

33. KeyCity controlled Mr. Besso's opportunity for profit and loss by dictating the days worked and the rate paid.

34. KeyCity controlled all the significant or meaningful aspects of the job duties performed by Mr. Besso.

35. KeyCity exercised control over the location where Mr. Besso worked. Indeed, KeyCity required Mr. Besso to attend Company meetings and calls, required Mr. Besso to work in the office on certain days, and required Mr. Besso to travel to KeyCity's operating units in multiple states.

36. KeyCity exercised control over Mr. Besso by requiring Mr. Besso to follow KeyCity's instructions as to when, where, and how to perform his job duties.

37. KeyCity required Mr. Besso to render his services personally and could not outsource the work to others.

38. KeyCity exercised control over the rate of pay Mr. Besso received.

39. Mr. Besso was paid at regular intervals and by the job. Mr. Besso got paid regularly without having to place a candidate.

40. During the relevant period, Mr. Besso was economically dependent on KeyCity.

41. KeyCity set Mr. Besso's rates of pay, controlled his work schedule, and effectively prevented Mr. Besso from working other jobs for other companies while working for KeyCity. During the time Mr. Besso was classified as a 1099 worker/independent contractor, Mr. Besso was financially reliant on the work he performed for KeyCity.

42. KeyCity directly determines Mr. Besso's opportunity for profit and loss.

43. No real investment is required from Mr. Besso to perform his job.

44. KeyCity required Mr. Besso to travel to perform his work. KeyCity would always reimburse Mr. Besso for his travel expenses.

45. KeyCity did not engage Mr. Besso on a project-by-project basis.

46. Mr. Besso's services were integral to KeyCity's business.

47. Mr. Besso's work did not require a unique skill set or require specialized training.

48. During the period when KeyCity classified Mr. Besso as an independent contractor, he routinely worked over forty (40) hours per week. Mr. Besso generally worked six (6) days a week, and his work shift consisted of approximately 10-12 hours per day when he worked from KeyCity's office, approximately 8-9 hours per day while working remotely, and approximately 4-5 hours per weekend.

49. Mr. Besso was not paid overtime at time and one-half his regular rate of pay for hours worked in excess of forty (40) hours in a work week. Instead, Mr. Besso was paid an initial flat rate of $2,500 per month, which increased to $3,500 per month in February 2021 and $5,000 per month in April 2021. However, all were flat rates. Accordingly, KeyCity's pay practices violated the overtime wage provisions of the FLSA.

50. Mr. Besso was an employee under the FLSA when KeyCity labeled him as a 1099 worker/independent contractor.

4876-8581-8489v.9

51. KeyCity knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of misclassifying and failing to pay overtime compensation with respect to Mr. Besso.

52. The FLSA requires employers to keep accurate time records of hours worked. 29 U.S.C. § 211(c).

53. At all relevant times, on information and belief, and during the course of Mr. Besso's employment, KeyCity failed to maintain accurate and sufficient time records.

**B. Mr. Besso's employment after November 1, 2021.**

54. As stated above, KeyCity hired Mr. Besso to perform recruiting and training services as an independent contractor on September 1, 2020.

55. Prior to September 1, 2020, Mr. Besso had successfully been running his own recruiting practice for 23 years, averaging approximately $350,000 - $400,000 in annual recruiting fees.

56. Due to his results and his positive impact on KeyCity, KeyCity made Mr. Besso a Limited Partner in the fall of 2021 and officially hired Mr. Besso as a W-2 employee on or about November 1, 2021. Mr. Besso served as the Chief Talent Officer in his W-2 role.

57. Throughout Mr. Besso's time performing work for KeyCity as a purported 1099 independent contractor and W-2 employee, Mr. Besso had continuously been a top-performing employee, never been written up, never received a bad review, and never received any type of disciplinary action, whether informal or formal.

58. On April 11, 2022, Mr. Besso learned that his prostate cancer had, sadly, relapsed.

59. In April 2022, Mr. Besso informed KeyCity that he had been diagnosed with recurring prostate cancer.

4876-8581-8489v.9

60. From April 2022 through July 2022, Mr. Besso notified the various KeyCity Partners of his cancer and treatments.

61. On July 14, 2022, Mr. Besso informed Lasater of his cancer and remission at the KeyCity Partner Retreat.

62. During the July Partner Retreat, Lasater and Mr. Besso presented a Ranking Report of the KeyCity personnel—Partners and employees included. Lasater and Mr. Besso jointly created the Ranking Report. The Ranking Report ranked KeyCity personnel into five (5) different categories: Tier One, Tier Two, Tier Three, Tier Four, and Tier Five. Tier One is the highest tier for the top-ranked personnel. The July 2022 Ranking Report had Mr. Besso in Tier One.

63. On September 18, 2022, Lasater sent Mr. Besso a newly updated KeyCity Ranking Report. Once again, Mr. Besso was in Tier One.

64. In September and throughout October 2022, Mr. Besso was involved in KeyCity's healthcare renewal. During this renewal process, KeyCity received notification from its insurance provider that its healthcare premiums would significantly increase, at least in part, because of Mr. Besso's cancer treatments. In fact, it was confirmed on October 20, 2022, that KeyCity's healthcare premiums would increase by twenty-nine (29) percent to keep the same coverage as the prior year unless KeyCity severely diluted its coverages.

65. Mr. Besso planned on presenting the healthcare renewal prices at the upcoming Partner Retreat on October 28, 2022.

C. **Defendants engaged in defamatory conduct.**

66. On October 26, 2022, a mere six (6) days after confirming the healthcare renewal prices, Lasater terminated Mr. Besso's employment on behalf of KeyCity. When Mr. Besso inquired about the reasons for this shocking action, Lasater first provided a baseless and

defamatory reason that was demonstrably false: that Mr. Besso had swam in his underwear around other employees at the employee retreat on or around September 15, 2022.

67. Mr. Besso adamantly and properly refuted the false and defamatory statement, Lasater then retracted the purported reason and provided an alternate, equally verifiably false explanation: that Mr. Besso had high business expenses.

68. Once again, Mr. Besso properly refuted the false statement. However, Lasater eventually stated he just wanted to separate Mr. Besso from his employment.

69. Upon information and belief, Defendants have repeated and published the utterly false and defamatory statement to third parties subsequent to the October 26, 2022, interaction. On or around March 2023, Mr. Besso became aware of Defendants' publication of the defamatory statements to others when two former KeyCity employees notified him of such.

70. The defamatory and false statements at issue that Defendants published and Mr. Besso became aware of are as follows:

　　a. That Mr. Besso's employment was terminated in part because he was dressed inappropriately and wore nothing but underwear around KeyCity employees during the employee retreat on or around September 15, 2022;

　　b. That Mr. Besso's employment was terminated in part because he had hired multiple bad candidates and that he was not effective in his position; and

　　c. That Mr. Besso spent excessive amounts on dinners and had inappropriately high expenses.

71. Defendants' statements referring to Mr. Besso are defamation per se as they accuse Mr. Besso as a professional lacking the skill necessary for the proper conduct of his profession and falsely accuse Mr. Besso of engaging in sexual misconduct. The statements are entirely and

irrefutably false, and the defamatory statements were made to diminish and injure Mr. Besso's reputation.

72. Such statements have irreparably harmed Mr. Besso's professional standing. The statements were in an effort to defame Mr. Besso's character. Defendants knew the statements to be false and showed a reckless disregard for the truth of the statements and the professional impact it would have on Mr. Besso's professional standing.

73. Mr. Besso hired over 60 candidates during his time performing work for Defendant KeyCity. When Mr. Besso was terminated from KeyCity on October 26, 2022, Mr. Besso believes that there were approximately 80 corporate employees on payroll. On information and belief, Mr. Besso believes there are 23 employees now left.

74. Because of Defendants' false accusations, not a single employee Mr. Besso hired, trained, coached, or developed has contacted Mr. Besso to conduct business with him since their respective departures. It is commonplace—over 70% of the time or more—when Mr. Besso interviews, hires, trains, coaches, or develops an employee that they maintain a professional relationship and/or solicit Mr. Besso for additional recruiting services.

75. Over the 23 years prior to Mr. Besso's employment with KeyCity, Mr. Besso averaged approximately $350,000 - $400,000 in annual recruiting fees. Because of Defendants' false accusations, from October 26, 2022, through the date of this filing, Mr. Besso has had a total income of approximately $26,000 in recruiting fees, a significant decrease from the business he generated before working at KeyCity and the defamatory statements.

76. Pursuant to Texas Civil Practice & Remedies Code § 73.055, Mr. Besso requests that Defendants correct, clarify or retract the false and misleading statements described in paragraphs 66 through 72 above and any all other statements made by Defendants that are the same

or similar in nature. Mr. Besso is aware that discussions containing the false statements described above were published and/or distributed starting on October 26, 2022, and have continued through the present. Mr. Besso is also aware that Lasater made various phone calls/discussions during the same period voicing the same false statements that are described in paragraphs 66 and 72 above. Although it is impossible for Mr. Besso to identify each date, time, and place of all of the communications, Defendants have knowledge of each conversation, publication, and distribution. Mr. Besso requests that Defendants immediately correct, clarify, or retract the false and misleading statements.

## V.     CONDITIONS PRECEDENT

77.    All conditions precedent for Mr. Besso to bring this action have been performed, have occurred, or have been waived or excused.

## VI.     CAUSES OF ACTION

**COUNT ONE: FAILURE TO PAY OVERTIME WAGES PURSUANT TO FLSA 29 U.S.C. § 207**

78.    Mr. Besso realleges and incorporates by reference all allegations in all preceding paragraphs.

79.    At all relevant times, KeyCity engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

80.    The overtime wage provisions set forth in §§ 201 *et seq*. of the FLSA apply to KeyCity.

81.    When Mr. Besso was labeled as a 1099 worker/independent contractor by KeyCity, Mr. Besso routinely worked in excess of 40 hours per seven-day workweek.

82.    When Mr. Besso was labeled as a 1099 worker/independent contractor by KeyCity, Mr. Besso was economically dependent on KeyCity as opposed to being in business for himself.

4876-8581-8489v.9

83. KeyCity is an "employer" of Mr. Besso within the meaning of the FLSA. 29 U.S.C. § 203(d).

84. At all relevant times, Mr. Besso was an employee within the meaning of 29 U.S.C. §§ 203(e) and 207(a). Thus, KeyCity misclassified Mr. Besso.

85. When Mr. Besso was labeled as a 1099 worker/independent contractor by KeyCity, KeyCity failed to pay Mr. Besso the applicable overtime wage for each hour in excess of forty (40) during each workweek in which he worked in violation of 29 U.S.C. § 207.

86. Based upon the conduct alleged herein, KeyCity knowingly, intentionally, and willfully violated the FLSA by not paying Mr. Besso the overtime wage required under the FLSA.

87. Because KeyCity's violations of the FLSA have been willful, a three-year statute of limitations applies to this Cause of Action, pursuant to 29 U.S.C. § 255.

88. Due to KeyCity's FLSA violations, Mr. Besso is entitled to recover from KeyCity overtime wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

**COUNT TWO: INDIVIDUAL LIABILITY UNDER THE FLSA**

89. Mr. Besso realleges and incorporates by reference all allegations in all preceding paragraphs.

90. At all times mentioned herein, Lasater was a corporate officer with operational control over KeyCity.

91. The FLSA generally requires "employers" to pay their employees overtime for workweeks longer than forty hours. 29 U.S.C. § 207(a). The FLSA defines an "employer" as "any

4876-8581-8489v.9

person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

92.     The FLSA's definition of "employer" "is expansive and covers any employer, including a corporate officer, with 'managerial responsibilities' and 'substantial control of the terms and conditions of the [employer's] work.'" *Hernandez v. Larry Miller Roofing, Inc.*, 628 F. App'x 281, 284 (5th Cir. 2016) (alteration in original) (quoting *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984)).

93.     To determine whether an individual is an "employer" under the FLSA, courts in the Fifth Circuit consider whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012) (quotations omitted).

94.     Upon information and belief, Lasater is a founding partner and CEO of KeyCity, has the power to hire and fire employees, supervise and control work schedules and conditions of employment, determine the rate and method of pay, and maintain records. Therefore, Lasater was an "employer" or "joint employer" of Mr. Besso along with KeyCity and is, therefore, individually liable for FLSA violations.

### COUNT THREE: DEFAMATION

95.     Mr. Besso incorporates each of the allegations above as if fully set forth herein.

96.     Mr. Besso is neither a public official nor a public figure for any purpose.

97.     Defendants are non-media defendants.

4876-8581-8489v.9

98. The foregoing statements made and published by Defendants were statements of fact that were false, both in their particular details and in the main point, essence, or gist in the context in which they were made.

99. The foregoing statements made and published by Defendants directly and/or indirectly referred to Mr. Besso.

100. Each of those statements contained falsehoods about Mr. Besso.

101. The false statements published by Defendants were defamatory and defamatory per se as they injured Mr. Besso's reputation and exposed him to public hatred, contempt, and/or ridicule and impeached his honesty, integrity, virtue, and reputation.

102. The foregoing statements made and published by Defendants were defamatory and defamatory per se because they injured Mr. Besso in his profession and throughout his business industry.

103. In the alternative, the foregoing statements made or published by Defendants were defamatory through innuendo and/or implication.

104. Defendants are strictly liable for the damages caused by the defamation.

105. Alternatively, the Defendants knew or should have known the foregoing defamatory statements were false or were reckless with regard to whether the statements were true.

106. The false statements published by Defendants caused Mr. Besso to suffer reputational, economic, and emotional harm.

107. As a direct and proximate result of the aforementioned acts, Mr. Besso suffered actual damages, general damages, and exemplary damages.

108. Due to Defendants' actions, Mr. Besso is entitled to recover his actual damages, general damages, exemplary damages, prejudgment interest, postjudgment interest, and court costs.

## VII.  JURY DEMAND

109. Mr. Besso demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Thom Besso prays for the following relief:

A. Unpaid overtime pay, and an additional equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor's regulations;

B. Reasonable attorneys' fees, expert fees, costs, and expenses of this action as provided by the FLSA;

C. Recover damages under his defamation claims;

D. Nominal, general, actual, special, and exemplary damages;

E. Pre-judgment and post-judgment interest at the highest rates allowed by law;

F. Attorneys' fees, costs, and expenses; and

G. Such other relief as to which Plaintiff may be entitled.

> Respectfully submitted,
> **MUNSCH HARDT KOPF & HARR, P.C.**
> By: */s/ Michael A. Harvey*
> **Michael A. Harvey**
> State Bar No. 24058352
> Federal ID No. 917759
> 700 Milam Street, Suite 800
> Houston, Texas 77002
> Phone:  (713) 222-4071
> Fax:  (713) 222-5868
> mharvey@munsch.com
> **ATTORNEY-IN-CHARGE FOR PLAINTIFF THOM BESSO**

**OF COUNSEL:**
Deryck Van Alstyne
State Bar No. 24126550
700 Milam Street, Suite 800
Houston, Texas  77002
Phone: (713) 222-4071
dvanalstyne@munsch.com

4876-8581-8489v.9