UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**THOM BESSO,**

  Plaintiff,

v.                                        No. 4:23-cv-00906-P

**KEYCITY CAPITAL LLC, ET AL.,**

  Defendants.

## MEMORANDUM OPINION & ORDER

Before the Court are Defendants KeyCity Capital LLC's ("KeyCity") and Tie Lasater's ("Lasater") (collectively, "Defendants") Motion for Summary Judgment (ECF No. 67) and related Motion to Strike (ECF No. 75). Having considered the Motions, docket filings, and applicable law, the Court finds that both Motions should be granted.

## BACKGROUND

Thom Besso was hired by KeyCity as a recruiter in November 2021. In April 2022, Besso learned that his prostate cancer had returned, and that treatment would require a seven-week radiation plan. Besso immediately notified KeyCity officers of his diagnosis and treatment plan. By June 2022, Besso completed the treatment, and his cancer once again went into remission.

In late September and early October 2022, Besso assisted KeyCity in its health insurance renewal. During that process, Besso learned that KeyCity's health insurance premiums would likely increase and believed that this was due, in part, to his expensive cancer treatments. Besso was terminated on October 26, 2022.

KeyCity asserts various other bases for Besso's termination besides his cancer treatments: submitting excessive business expenses; buying expensive food and drinks on KeyCity's accounts; swimming in underwear at a company retreat; and being ineffective at his job.

Besso brought suit against KeyCity and its CEO, Lasater, on August 31, 2023, asserting claims for defamation and violations of the American with Disabilities Act of 1990 ("ADA"). On October 10, 2024, the Court granted an unopposed motion by Besso to substitute his current counsel for his previous counsel. On November 4, 2024, Defendants filed a Motion for Summary Judgment on both claims. Besso filed a Response to Defendants' Motion and attached the declarations of two previously undisclosed witnesses. Defendants then moved to strike those declarations. The Court now addresses both Motions.

## LEGAL STANDARD

### A. Disclosure of Witnesses

Rule 26 of the Federal Rules of Civil Procedure requires parties to disclose "each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." FED. R. CIV. P. 26(a)(1)(A)(i). The Rule further requires that a "party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response . . . in a timely manner" upon learning that a disclosure is incomplete or incorrect. FED. R. CIV. P. 26(e). Under Rule 37, failure to supplement means that the party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." FED. R. CIV. P. 37(c)(1).

### B. Summary Judgment

Summary Judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact" and "is entitled to judgment as a matter of law." FED. R. CIV. P. 55(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" when it might affect the outcome of a case. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

2

When determining whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmovant. *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). In conducting its evaluation, the Court may rely on any admissible evidence available in the record but need only consider those materials cited by the parties. FED. R. CIV. P. 55(c)(1)–(3). But the Court need not sift through the record to find evidence in support of the nonmovant's opposition to summary judgment; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

### C. Defamation

To establish a prima facie case of defamation, a plaintiff must show: "(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages, unless the statement constitutes defamation per se." *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017). "[A]n allegedly defamatory publication should be construed as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000). Whether a statement constitutes defamation per se is generally a question of law. *In re Lipsky*, 460 S.W.3d 579, 596 (Tex. 2015) (citation omitted).

### D. ADA

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Such discrimination can be proven by direct or circumstantial evidence. *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019). When circumstantial evidence is the basis for the claim, the *McDonnell Douglas* burden-shifting framework applies. *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

## ANALYSIS

The Court will begin with Defendants' Motion to Strike. It will then analyze Defendants' Motion for Summary Judgment.

### A. Motion to Strike

Before addressing the Motion for Summary Judgment, the Court must determine what evidence is properly before it. To do that, the Court must ascertain whether the nondisclosure of the Jackson and Lee Declarations (the "disputed declarations") was substantially justified or harmless. Failing to provide a required disclosure may be substantially justified if "parties could differ as to whether the party was required to comply with the disclosure [obligation]." *Olivarez v. GEO Grp., Inc.*, 844 F.3d 200, 205 (5th Cir. 2016). And courts have found nondisclosure substantially justified when the disclosing party had no knowledge of the person or evidence until after the discovery deadline has passed." *Drechsel v. Liberty Mut. Ins. Co.*, No. 3:14-cv-162-M-BN, 2015 WL 7067793, at *2 (N.D. Tex. Nov. 12, 2015). The Fifth Circuit addresses harmlessness under Rule 37(c)(1) by evaluating four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 729 (5th Cir. 2010) (quoting *Tex. A&M Res. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003)). Because Plaintiff does not attempt to show that the nondisclosure was substantially justified, the Court will only evaluate whether the nondisclosure was harmless under the four factors.

The disputed declarations are undoubtedly important to Besso's case. Indeed, the Jackson Declaration is the only evidence to combat Defendants' declaration that KeyCity was not concerned about the rising insurance premiums.[1] This factor therefore weighs against striking the disputed declarations.

---

[1] *See* ECF No. 71, at 11 (referencing the Jackson Declaration and stating: "The parties have therefore submitted conflicting declarations").

4

However, the disputed declarations are also highly prejudicial to Defendants. The discovery deadline in this case was October 4, 2024. And the deadline for dispositive motions was November 4, 2024. While the Court is sympathetic to Besso's argument that his current counsel only inherited this case on October 10, 2024, this does not explain why counsel for Besso did not notify Defendants of the nondisclosure *at least* before filing the Response. Instead, Defendants became apprised of the disputed declarations upon their review of Besso's Response and appendix in support. Because the disclosure came so late in the game, Defendants "had no opportunity to depose these undisclosed witnesses during discovery[,] and had already moved for summary judgment[,]" demonstrating clear prejudice to Defendants. *JMC Constr. LP v. Modular Space Corp.*, No. 3:07-CV-01925-B, 2008 WL 11425650, at *4 (N.D. Tex. Oct. 28, 2008).

Besso's argument that Defendants cannot claim prejudice because "[b]oth Jackson and Lee were former employees of KeyCity" is unpersuasive for two reasons. *First*, as discussed in the January 16, 2025 hearing on the Motion to Strike, Jackson and Lee had both left KeyCity by the time this lawsuit was filed. *Second*, and more importantly, even if Jackson and Lee were still KeyCity employees, it is not the Defendants' burden to interview all eighty of KeyCity's employees to determine which employees may have relevant evidence—such disclosure is required of *Plaintiff*.

With respect to the third factor, the Court is reluctant to grant a continuance. This case is set for trial in less than forty days. Consequently, although Plaintiff argues that "[a]ny claimed prejudice is minimal and curable," the Court does not see a path short of resetting the trial date. If a continuance were granted, the Court would need to wait first for depositions of the undisclosed witnesses and then for briefing on a renewed motion for summary judgment. The business of the Fort Worth Division of the Northern District of Texas precludes the undersigned from doing so. *See X Corp. v. Media Matters for Am.*, No. 4:23-CV-01175-O, 2024 WL 1895255, at *6 (N.D. Tex. Apr. 26, 2024) (O'Connor, J.) (explaining the Fort Worth Division's uniquely busy docket).

The last factor also weighs against Besso because the timing and manner of the disclosure is inexcusable. Again, the Court understands and is sympathetic to counsel for Besso's frustration in joining an under-developed case after the close of discovery. But from the moment counsel joined the case on October 10, 2024, they had a duty to play with the cards they were dealt. Disclosure of the witnesses therefore should have occurred the moment they thought such evidence was relevant to the case, which was, at the very latest, before filing Plaintiff's Response to Defendants' Motion for Summary Judgment. Blaming prior counsel for inadequate disclosures does not absolve current counsel of its failure to supplement upon discovery as required by Rule 37. Had disclosure occurred at the end of October or beginning of November, before the Motion for Summary Judgment was fully ripe, this factor may have been evaluated differently.

In sum, although the evidence presented in the disputed declarations is unmistakably important to Besso's case, the prejudice to Defendants, the Court's inability to cure with a continuance, and the lack of explanation for nondisclosure all suggest that the disputed declarations should be stricken. The Court will therefore grant the Defendants' Motion to Strike and strike the disputed declarations from the record.

### B. Motion for Summary Judgment

Turning now to Defendants' Motion for Summary Judgment, the Court will first review Besso's defamation claim and then turn to Besso's ADA claim.

1. <u>Defamation Claim</u>

Defendants assert that Besso presents no evidence of damages for his defamation claim, and therefore there is no genuine dispute of material fact. Besso responds that the statements made by Lasater relating to Besso swimming in his underwear at a company event and submitting excessive business expenses constitute defamation per se. Defamation per se may apply when "statements . . . are so obviously hurtful to a plaintiff's reputation that the jury may presume general damages." *Hancock v. Variyam,* 400 S.W.3d 59, 63 (Tex. 2013). The statement must fall into one of four categories: "(1) imputation of a

6

crime; (2) imputation of a loathsome disease; (3) injury to a person's office, business, profession, or calling; or (4) imputation of sexual misconduct." *Levine v. Steve Scharn Custom Homes, Inc.*, 448 S.W.3d 637, 650 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Besso asserts that the statements made by Lasater fall under categories 3 and 4. For category 3, injury to a person's office, business, profession, or calling, Lasater's statements are not defamation per se. The Supreme Court of Texas has said that "[d]isparagement of a general character, equally discreditable to all persons, is not enough unless the particular quality disparages is of such a character that is peculiarly valuable in the plaintiff's business or profession." *Hancock*, 400 S.W.3d at 67 (citing RESTATEMENT (SECOND) OF TORTS § 573 cmt. e (1977)). Here, Besso was a recruiter at KeyCity. And the statements that he swam in his underwear and submitted excessive expenses is not specifically damaging to a recruiter—those are statements equally disparaging to all individuals and therefore not defamation per se. The Court rejects Besso's argument that Lasater's statements constitute defamation per se under category 3.

As for category 4, the imputation of sexual misconduct, Lasater's statements likewise do not constitute defamation per se. Examples of statements imputing sexual misconduct include calling someone a "pervert" and "pedophile," *see Montano v. Cronan*, No. 09-20-00232-CV, 2021 WL 2963801 (Tex. App.—Beaumont July 15, 2021, no pet.); calling someone's wife a "slut," *see Marshall v. Mahaffey*, 974 S.W.2d 942, 949–50 (Tex. App.—Beaumont 1998, pet. denied); and alleging that someone sexually molested another individual, s*ee Miranda v. Byles*, 390 S.W.3d 543, 552 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Lasater's statement about Besso swimming in his underwear is incomparable to such examples. There is nothing directly sexual about saying a man swam in his underwear. While it may be inferred that such an action is inappropriate, it does not necessarily suggest sexual misconduct. The Court therefore rejects Besso's argument that Lasater's statements constitute defamation per se under category 4.

Because Lasater's statements do not constitute defamation per se under any of the four categories, the Court finds that there is no genuine

7

dispute of material fact concerning Besso's defamation claim. Therefore, the Court will grant summary judgment in favor of Defendants on Besso's defamation claim.

### 2. ADA Claim

Defendants also argue that Besso's ADA claim should be dismissed because Besso cannot make a prima facie case that he was subject to discrimination. Because Besso offers no direct evidence of discrimination, the *McDonnell Douglas* framework applies. Under the *McDonnell Douglas* test, Besso must show: (1) he has a disability; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of the disability. *McDonnell Douglas*, 411 U.S. at 702. While the first two prongs are undisputed, Defendants argue that Besso cannot present evidence that he was subject to an adverse employment decision on account of his disability. In response, Besso claims first that a prima facie case for his ADA claim is established through the "temporal proximity" test, and second that there are genuine disputes of material fact preventing summary judgment.

#### a. Temporal Proximity

Temporal proximity looks at the link between "any employer's knowledge of protected activity and an adverse employment action" to prove the third element of the *McDonnell Douglas* framework. *Hanks v. Shinseki,* No. 3:08-1594-G, 2010 WL 3000835, at *5 (N.D. Tex. July 28, 2010). If "close enough timing between the two events" exists, then an adverse employment decision can be presumed. *January v. City of Huntsville,* 74 F.4th 646, 653 (5th Cir. 2023). Courts have found that "a few months [is] sufficient to satisfy causation in a prima facie case." *Id.* But not six months. *See Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 207 (5th Cir. 2007).

As a threshold matter, this Court must determine what the relevant "protected activity" is for the purposes of the temporal proximity analysis. Besso insists that the rise of insurance premiums is the relevant protected activity. Defendants, on the other hand, contend that the relevant protected activity was Besso's disclosure of his cancer

8

diagnosis to KeyCity officials. The Court agrees with Defendants. A plain-language interpretation of "protected *activity*" requires that it be some action effectuated by the plaintiff. Indeed, the cases cited by Besso in his Response evidence this fact.[2] Here, Besso did not personally raise the insurance premiums—the insurance company did. At best, the discovery of higher insurance premiums may show pretext. But, because the rise in insurance premiums was not an action taken by Besso, it cannot serve as a "protected activity."

Consequently, the relevant date for the Court's temporal proximity analysis is the date that Besso made KeyCity aware of his cancer diagnosis. Besso points out that Defendant Lasater became aware of his cancer on July 15, 2022, and Besso was then terminated on October 26, 2022. But Lasater was not the only—or first—KeyCity principal that Besso notified. Besso notified KeyCity's CFO and Senior Vice President of his cancer in April 2022, marking a six-month gap between when he notified his employer and when he was terminated—the alleged adverse action. Such a gap cannot sustain a finding of a prima facie case under the temporal proximity test. *Russell*, 234 Fed. Appx. at 207 ("[E]vidence of temporal proximity alone cannot sustain an inference of causation when there is a six-month gap between the protected activity and the alleged adverse employment action.").

---

[2] *See Hanks v. Shinseki*, No. 3:08-1594-G, 2010 WL 3000835, at *4 (N.D. Tex. July 28, 2010) (analyzing the filing of an EEO complaint as the "protected activity"); *January*, 74 F.4th at 653 (analyzing the plaintiff's action of telling his manager "he was going to file an EEOC complaint" as a "protected activity"); *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016) (analyzing the plaintiff's complaint to a superior as a "protected activity"); *Evans v. City of Houston*, 246 F.3d 344, 351–352 (5th Cir. 2001) (analyzing plaintiff's action of "testifying at a co-worker's grievance hearing" as a "protected activity"). Other courts in the Fifth Circuit have also clarified that the action must be something done by the plaintiff. *See Satetkoo v. Admins. of Tulane Educ. Fund*, 31 F.4th 990, 1001 (5th Cir. 2022) ("To demonstrate that a causal link exists between the protected activity and the adverse employment action at the prima facie stage, an employee can show close enough timing between *her* protected activity and the adverse employment action.") (emphasis added); *Coleman v. Exxon Chemical Corp.*, 162 F. Supp. 2d 593, 636 (S.D. Tex. 2001) ("A plaintiff may show a "causal connection" between *his* protected activity and the adverse employment action through temporal proximity.") (emphasis added).

### b. *Plaintiff's Evidence*

Besso's next response is that the ADA claim raises disputes of material fact and therefore cannot be subject to summary judgment. Besso alleges that he was terminated based on KeyCity's concern over increasing health insurance premiums. KeyCity has presented evidence that its management was unconcerned with such increasing premiums.[3] Besso has offered no competent summary judgment evidence to contradict KeyCity's evidence. Thus, there is no fact issue, and the Plaintiff's Motion for Summary Judgment on the ADA claim must be granted.

## CONCLUSION

For the reasons above, the Court **GRANTS** Defendants' Motion to Strike the Jackson and Lee Declarations from the record. The Court further **GRANTS** Defendants' Motion and **ENTERS** summary judgment in Defendants' favor on Besso's defamation and ADA claims.

**SO ORDERED** on this **24th day of January 2025.**

*[signature: Mark T. Pittman]*

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

---

[3]*See* ECF No. 69, ¶¶ 12–13.